## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NICOLE M. RICCI**, | |
| Plaintiff, | |
| v. | Civil Action No. 11-cv-2185 (RLW) |
| **JOHN F. KERRY, Secretary,**<br>    **U.S. Department of State**, | |
| Defendant. | |

### MEMORANDUM OPINION[1]

Plaintiff Nicole Ricci ("Ricci") is currently employed by the U.S. Department of State as a Foreign Affairs Specialist in the Office of Marine Conservation. She brings this action against John F. Kerry in his official capacity as Secretary of State, asserting claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*[2] Ricci claims that she was the victim of sex-based harassment, and she further claims that after she complained about this alleged harassment, her supervisors at the State Department began subjecting her to a retaliatory hostile work environment. The case is presently before the Court on the State Department's

---

[1]     This unpublished memorandum opinion is intended solely to inform the parties and any reviewing court of the basis for the instant ruling, or, alternatively, to assist in any potential future analysis of the *res judicata*, law of the case, or preclusive effect of the ruling. The Court has designated this opinion as "not intended for publication," but this Court cannot prevent or prohibit the publication of this opinion in the various and sundry electronic and legal databases (as it is a public document), and this Court cannot prevent or prohibit the citation of this opinion by counsel. *Cf.* Fed. R. App. P. 32.1. Nonetheless, as stated in the operational handbook adopted by our Court of Appeals, "counsel are reminded that the Court's decision to issue an unpublished disposition means that the Court sees no precedential value in that disposition." D.C. Circuit Handbook of Practice and Internal Procedures 43 (2011).

[2]     Ricci originally sued former Secretary of State Hillary Clinton, but upon confirmation, Secretary Kerry was automatically substituted as the named defendant. *See* Fed. R. Civ. P. 25(d). Insofar as Secretary Kerry is named in his official capacity only, the Court will refer to the defendant as the State Department, or State, for simplicity's sake.

Motion for Summary Judgment (Dkt. No. 23) and Ricci's Motion for Preliminary Injunction

(Dkt. No. 26). Upon consideration of the parties' briefing, the entire record in this action, and

the arguments of counsel during the hearing, the Court concludes, for the reasons that follow,

that the State Department's Motion will be **GRANTED** and that Ricci's Motion will be

**DENIED**. For purposes of this ruling, the Court will assume the reader is familiar with the

factual assertions and arguments advanced by the parties and will not recite those again here.

## ANALYSIS

### A. The State Department's Motion for Summary Judgment

#### 1. Standard of Review

Summary judgment is appropriate when the moving party demonstrates that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law. FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Moore*

*v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). To establish a genuine issue of material fact, the

nonmoving party must demonstrate—through affidavits or other competent evidence, FED. R.

CIV. P. 56(c)(1)—that the quantum of evidence "is such that a reasonable jury could return a

verdict for the nonmoving party." *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting

*Anderson*, 477 U.S. at 248). While the Court views all facts in the light most favorable to the

nonmoving party in reaching that determination, *Keyes v. District of Columbia*, 372 F.3d 434,

436 (D.C. Cir. 2004), the nonmoving party must nevertheless provide more than "a scintilla of

evidence" in support of its position, *Anderson*, 477 U.S. at 252.

#### 2. The Scope of Ricci's Claims

At the outset, the Court notes that the precise nature of Ricci's claims has been a subject

of some confusion. Through her Complaint, Ricci pled two counts: "Count I" is captioned

"Denial of Career Ladder Promotion, Sexual Harassment, and Continuing Hostile Work Environment," (*see* Dkt. No. 1 ("Compl.") at ¶¶ 4-19), and "Count II" is entitled "Retaliation and Continuing Hostile Work Environment," (*see id.* ¶¶ 20-25). In substance, however, it originally seemed these two counts were comprised of several discrete claims under Title VII. Indeed, in seeking summary judgment, the State Department treated Ricci's claims as four separate causes of action—(1) denial of career ladder promotion based on gender; (2) hostile work environment sexual harassment; (3) hostile work environment based on gender and retaliation; and (4) retaliation. In her opposition, Ricci did not really contest State's characterization of her claims, but essentially just responded to most of its arguments in turn.

During oral argument, however, Ricci's counsel clarified that Ricci pursues two—and only two—claims in this case: (1) a claim of hostile work environment based on her gender, and (2) a claim of retaliatory hostile work environment. In other words, Ricci does not contend that any single incident gives rise to an independent discrimination or retaliation claim, but that the State Department's pattern of conduct created gender-based and retaliatory hostile work environments. With this understanding in mind, the Court moves to the merits of Ricci's two claims.

### 3. Ricci's Gender-Based Hostile Work Environment Claim

The allegations that Ricci marshals in support of her sex-based hostile work environment claim are these: following two instances of inappropriate behavior by her second-line supervisor, William Gibbons-Fly—one that took place while on work travel in Bellevue, Washington in August 2009, and the second during a business trip to New York City in November 2009—the State Department discriminatorily denied Ricci a career-ladder promotion to the GS-13 level. (*See* Dkt. No. 30-24 ("Pl.'s MSJ Opp'n") at 13) ("Ms. Ricci has set forth a prima facie case of

sexual harassment and hostile work environment for denial of promotion. After the hugging incident in Bellevue and assault in New York, Ms. Ricci's promotion was denied.").[3] These incidents represent the sum total of the acts Ricci claims created a hostile work environment based on her sex. (*See id.* at 12-15).

The State Department seeks summary judgment on this claim on several grounds. First, State argues that Ricci's claim is barred on statute of limitations grounds because she failed to timely exhaust her administrative remedies. Second, State insists that, even if timely, Ricci's claim fails on the merits because her allegations do not rise to the level of severity or pervasiveness necessary to sustain an actionable hostile work environment claim, and because Ricci cannot establish that the underlying acts were motivated by her gender in any event. Finally, State invokes a *Faragher/Ellerth* defense, rejoining that Ricci cannot pursue this claim because she failed to take advantage of the State Department's procedures to prevent and correct harassment. Agreeing with State's first argument, the Court does not reach the other two.

It is well settled that Title VII plaintiffs must timely exhaust their administrative remedies prior to bringing suit. *See Steele*, 535 F.3d at 693; *Harris v. Gonzales*, 488 F.3d 442, 443 (D.C. Cir. 2007). For federal employees, "[f]ederal regulations bar discrimination claims that an

---

[3]     At all times relevant to this case, Mr. Gibbons-Fly served as the Director of the Office of Marine Conservation ("OMC"). In August 2009, Ricci and Mr. Gibbons-Fly traveled to Bellevue, Washington as part of a U.S. delegation to the North Pacific Ocean negotiations. (*See* Dkt. No. 37-1 ("Compiled Facts") at ¶ 52). After socializing one evening at the hotel bar with other colleagues, Mr. Gibbons-Fly walked Ricci to the elevator bank and hugged her goodnight. (*Id.* ¶ 53). According to Ricci, Mr. Gibbons-Fly "grabbed, embraced [her] and pulled [her] toward him and put his face in the cradle of her neck and inhaled and held [her] . . . . [She] pushed him away and said goodnight and went upstairs." (*Id.* ¶ 53). Subsequently, Ricci and Mr. Gibbons-Fly were again on work travel to New York City in November 2009. While having some drinks at the hotel bar one evening during the trip, Mr. Gibbons-Fly apparently lost his temper, raised his voice, and used strong language that he admits was unprofessional. (*Id.* ¶¶ 56-58). According to Ricci, Mr. Gibbons-Fly "pinned her against the couch; [and he] started shoving his finger into her chest, and shouting with spit flying from his mouth." (*Id.* ¶ 58).

employee does not first bring to the attention of an agency's EEO counselor within forty-five days of the alleged conduct." *Vickers v. Powell*, 493 F.3d 186, 198 (D.C. Cir. 2007) (citing 29 C.F.R. §§ 1614.105(a), 1614.107); *see also Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006). "Dismissal is required when a plaintiff fails to exhaust [her] administrative remedies with respect to particular claims." *Ndondji v. InterPark, Inc.*, 768 F. Supp. 2d 264, 276-77 (D.D.C. 2011) (citing *Rann v. Chao*, 346 F.3d 192, 194-95 (D.C. Cir. 2003)). Here, State argues that Ricci failed to timely exhaust her administrative remedies because all of the alleged conduct giving rise to her sex-based hostile work environment claim occurred more than 45 days before Ricci first contacted an EEO counselor on April 21, 2010. The Court agrees.

To begin with, Ricci does not dispute that her contact with an EEO counselor on April 21, 2010, constitutes the operative contact for exhaustion purposes. (*See* Pl.'s MSJ Opp'n at 9) ("On April 21, 2010, Ms. Ricci included all of [her] complaints in her contact with an EEO counselor").[4] Instead, Ricci responds, without any meaningful analysis, that hostile work environment claims "are not judged under the filing standard for single incident claims." (*Id.* at 12). This, of course, is true. Under the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, so long as one act contributing to a hostile work environment "occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Morgan*, 536 U.S. 101, 117

---

[4] In particular, Ricci does not argue that her January 2010 communications with Jennifer DeHeer, an Attorney Advisor in the Office of Civil Rights, sufficed to exhaust her Title VII claims (*See* Dkt. No. 23 ("Def.'s MSJ Mem.") at 6-9). Even if Ricci were contending otherwise, since she completely failed to respond to the State Department's arguments contesting this potential theory, (*see id.* at 6-9), the Court would deem State's arguments conceded by Ricci. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997)) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

(2002) (distinguishing statute of limitations analysis as between hostile work environment claims and discrimination claims premised on discrete incidents); *see also Steele*, 535 F.3d at 691, 694 (applying *Morgan* to the 45-day exhaustion window covering federal employees).  But contrary to Ricci's position, *Morgan*'s "continuing violation" framework finds no application here because *all* of the acts comprising Ricci's gender-based hostile work environment claim occurred well outside the 45-day window preceding her EEO contact.  The Washington and New York incidents took place in August and November 2009, respectively—both several months before Ricci contacted an EEO counselor in April 2010.  (*See* Compiled Facts at ¶¶ 52-53, 56-58).  Further, Ricci was informed as early as October 2009 that she would not be promoted to the GS-13 level, and, by her own admission, she understood that decision to be "definitive" by no later than January 4 or 5, 2010—more than three months prior to April 2010.  (*See id.* ¶¶ 32-33, 37).  Since none of these acts occurred within the filing period, Ricci's claim is time-barred.

Undeterred, Ricci deploys two arguments to avoid this result.  Neither is persuasive.

First, Ricci invokes the doctrine of equitable tolling.  Our Circuit has "set a high hurdle for equitable tolling," permitting its application "only in extraordinary and carefully circumscribed instances." *Commc'ns Vending Corp. of Ariz., Inc. v. FCC*, 365 F.3d 1064, 1075 (D.C. Cir. 2004) (quoting *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 580 (D.C. Cir. 1998)).  Generally speaking, a plaintiff "is entitled to equitable tolling only if she shows (1) that she has been pursuing her rights diligently, and (2) that some extraordinary circumstance stood in her way and prevented timely filing." *Dyson v. District of Columbia*, 710 F.3d 415, 421 (D.C. Cir. 2013) (describing this standard as "a weighty burden").  In urging the doctrine's application here, Ricci relies exclusively on the D.C. Circuit's decision in *Bowden v. United States*, which recognized that equitable tolling might apply "when complainants neither knew nor had reason

to know about the limit," made "diligent but technically deficient efforts to act within a limitations period," or were "misled about the running of a limitations period, whether by an adversary's actions, by a government official's advice on which they reasonably relied, or by inaccurate or ineffective notice from a government agency." *Bowden*, 106 F.3d 433, 438 (D.C. Cir. 1997); *see also Washington v. Wash. Metro. Area Transit Auth.*, 160 F.3d 750, 752-53 (D.C. Cir. 1998)). But *Bowden* and its progeny lend no support to Ricci's position here because she fails to demonstrate that the State Department misled her as to her EEO filing deadline.

In arguing otherwise, Ricci focuses principally on the actions of Ms. DeHeer in January 2010, contending that Ms. DeHeer's failure to investigate Ricci's complaints provides a basis for equitable tolling. For several reasons, the Court disagrees. First, the record establishes that Ms. DeHeer did follow the appropriate procedures in responding to the concerns Ricci raised. With respect to the possible "workplace violence" issue—i.e., Mr. Gibbons-Fly's pinning and poking of Ms. Ricci while on travel in New York—Ms. DeHeer reported the matter to the Bureau of Diplomatic Security, as called for by Department regulations. (*See* Dkt. No. 30-21 (Pl.'s MSJ Ex. 21), Dkt. No. 25-12 (Def.'s MSJ Ex. L11)). And in response to the potential "sexual harassment" concerns alluded to by Ricci—i.e., Mr. Gibbons-Fly's allegedly inappropriate hug on the Washington trip—the undisputed facts confirm that Ms. DeHeer *did* initiate an investigation. Ms. DeHeer promptly set up an in-person interview with Ricci to discuss the incident, and it was only after Ricci reiterated that she did not believe Mr. Gibbons-Fly's conduct was sexual harassment and did not wish to move forward with such a claim that Ms. DeHeer did not pursue the investigation any further. (Compiled Facts at ¶ 70).[5] Ricci is therefore wrong on

---

[5] In responding to this fact in the Compiled Statement, Ricci "denies she stated she did not believe Ms. [sic] Gibbons-Fly's conduct was sexual harassment." (*See* Pl.'s Response to Compiled Facts at ¶ 70). That is, Ricci purports to deny that she told Ms. DeHeer, during an

the facts.  But even taking her assertions at face value, Ricci fails to explain how Ms. DeHeer's

failure to properly investigate would trigger tolling under *Bowden*.  In other words, even if true,

Ms. DeHeer's supposed failure to investigate is nothing like the sort of conduct that could have

*misled* Ricci about the deadline to pursue her claim.  *Bowden*, 106 F.3d at 438; *cf. Currier v.

Radio Free Europe*, 159 F.3d 1363, 1368 (D.C. Cir. 1998) (indicating that a "statement

promising [a plaintiff] a fair and impartial investigation, standing alone, provides inadequate

support for [an] equitable estoppel theory").

Perhaps sensing this, Ricci's counsel pivoted somewhat at oral argument, contending for

the first time that Ms. DeHeer failed to properly apprise Ricci of the specific 45-day time limit to

pursue an EEO claim.  It is true that, by regulation, the filing deadline shall be tolled if an

employee "was not notified of the time limits and was not otherwise aware of them."  29 C.F.R.

§ 1614.105(a)(2); *see also Harris*, 488 F.3d at 444.  But this is not what happened here.  Instead,

Ms. DeHeer repeatedly advised Ricci that she had not started the EEO process by contacting her,

and she offered to connect Ricci with an EEO Counselor and to "explain the EEO process."  (*See*

Dkt. No. 25-12 (Def.'s MSJ Exs. L7, L9)).  Moreover, Ms. DeHeer provided Ricci with a copy

of the State Department's Anti-Sexual Harassment policy, both by email and during the in-

person meeting in early February.  (*See* Dkt. No. 25-12 ("DeHeer Decl.") at ¶ 10).  This policy

_____

interview in early February 2010, that she did not believe the incident constituted sexual
harassment.  But the evidence Ricci cites does not support this assertion.  Ricci cites two email
messages with Ms. DeHeer, both of which are dated months later, in July and August 2010.  (*See*
Pl.'s Exs. 1T, 23).  These materials do nothing to refute Ms. DeHeer's summary of the events
that took place six months prior, in February 2010.  Additionally, Ricci's deposition testimony
*supports*, rather than refutes, the Department's version of events.  (*See* Dkt. No. 30-10 (Pl.'s MSJ
Ex. 10 ("Ricci Dep.") at 229-230)) ("So I came back, I met with Ms. DeHeer and I said I don't
think that this is sexual harassment per the Department's policy because it's not affecting my
work because my supervisor is still willing to work with me to resolve this issue.  So then I
immediately met with Mr. Gibbons-Fly post my meeting with Ms. DeHeer and informed Mr.
Gibbons-Fly that I was not filing a sexual harassment complaint and that there was no need for
an investigation . . . .").

expressly states that "[i]ndividuals who wish to file an EEO complaint **must** consult a Department of State EEO counselor within 45 days of the most recent harassing incident," (Dkt. No. 25-12 (Def.'s Ex. L13)) (emphasis in original). This chain of events is wholly uncontested by Ricci.[6] As such, Ricci cannot credibly contend that she was never apprised of the appropriate EEO procedures and time limits. Otherwise, Ricci faults David Balton, Deputy Assistant Secretary for Oceans and Fisheries, and Holly Koehler, a Foreign Affairs Specialist GS-15 in the OMC, for failing to investigate her complaints about Mr. Gibbons-Fly. She contends that their inaction provides a basis for equitable tolling under *Bowden*. (*See* Pl.'s MSJ Opp'n at 9-11). This argument is similarly unavailing. Even crediting Ricci's assertions as true—and the record is far from clear that Ricci ever *complained* to either individual about Mr. Gibbons-Fly's behavior, as she suggests—their potential failure to investigate does not equate to the type of misleading information about the running of her limitations periods that would trigger tolling under *Bowden*'s framework.

Absent equitable tolling, Ricci is left with her second argument to avoid the limitations bar—that she did not understand her non-promotion decision to be final until March 2010, less than 45 days before she contacted an EEO counselor. But this contention is belied by the record. Ricci admits that was told she would not be promoted to the GS-13 level as early as October 2009. (*See* Compiled Facts at ¶ 32). And the notion that Ricci did not think this decision final

---

[6]  Ricci also claims that Ms. DeHeer told her, in July 2010, that she "can report sexual harassment at any time." (*See* Pl.'s Resp. to Compiled Facts at ¶ 70). True enough. But Ricci leaves out the rest of Ms. DeHeer's response. After confirming that Ricci could report harassment and that State "will take any and all appropriate actions per the policy," Ms. DeHeer explained that "[w]hether or not it would be accepted for investigation in a formal complaint of discrimination would be a procedural legal decision pursuant to the 29 C.F.R. §1614 – i.e. making timely EEO contact. As you may remember from EEO Counseling, an individual has 45 calendar days after they believe that they have been discriminated against to initiate EEO Counseling." (*See* Dkt. No. 30-2 (Pl.'s MSJ Ex. 1T)). Thus, to the extent Ricci suggests that this message misled her as to the exhaustion deadline, this argument misses the mark.

until the following March is squarely contradicted by her deposition testimony, wherein she confirmed that she understood the decision not to promote her to the GS-13 level was "definitive" by no later than January 4 or 5, 2010.  (*Id.* ¶ 37).  Given these undisputed facts, Ricci's argument on this point borders on the frivolous.

In sum, because Ricci failed to timely exhaust her sex-based hostile work environment claim, the State Department is entitled to summary judgment on Count I.

### 4.  Ricci's Retaliatory Hostile Work Environment Claim

Through her second cause of action, Ricci alleges that the State Department subjected her to a retaliatory hostile work environment in violation of Title VII.  "In this Circuit, a hostile work environment can amount to retaliation under Title VII."  *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006) (citing *Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir. 2003)).  To prevail on this claim, Ricci must show that the State Department "subjected [her] to discriminatory intimidation, ridicule, and insult of such severity or pervasiveness as to alter the conditions of her employment and create an abusive working environment."  *Id.*; *see also Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2012) (summarizing legal standards for retaliatory hostile work environment).  As with all hostile work environment claims, these demanding standards "ensure that Title VII does not become a general civility code, and are intended to filter out complaints attacking the ordinary tribulations of the workplace."  *Perkins v. Vance-Cooks*, 886 F. Supp. 2d 22, 31 (D.D.C. 2012).  Ricci must also "establish a causal connection between the harassment and her protected activity to succeed on the claim."  *Ward v. District of Columbia*, --- F. Supp. 2d ----, 2013 WL 2897015, at *6 (D.D.C. June 14, 2013); *Lewis v. District of Columbia*, 653 F. Supp. 2d 64, 81 (D.D.C. 2009).  This is because "only the actions that have a causal link to protected activity may be considered part of a hostile work environment

claim." *Bergbauer v. Mabus*, --- F. Supp. 2d ----, 2013 WL 1245944, at *17 (D.D.C. Mar. 27, 2013); *see also Mason v. Geithner*, 811 F. Supp. 2d 128, 179 (D.D.C. 2011) ("[E]vidence that bears no connection to the plaintiff's protected status cannot support a hostile work environment claim."); *Noviello v. City of Boston*, 398 F.3d 76, 93 (1st Cir. 2005) ("It is only those actions, directed at a complainant, that stem from a retaliatory animus which may be factored into the hostile work environment calculus."). In other words, the Court must exclude from consideration those challenged acts that "lack a linkage" to Ricci's protected activity. *Mason*, 811 F. Supp. 2d at 179 (quoting *Bryant v. Brownlee*, 265 F. Supp. 2d 52, 63 (D.D.C. 2003)). With this framework in mind, the Court turns to the substance of Ricci's claim.

According to Ricci, after she contacted Ms. DeHeer in the Office of Civil Rights in January 2010 and complained about Mr. Gibbons-Fly's conduct, her supervisors began a "campaign of retaliatory actions" against her. (Pl.'s MSJ Opp'n at 17). In particular, Ricci contends that the State Department subjected her to a retaliatory hostile work environment through the following acts: (1) removing the North Pacific Fisheries negotiations from her portfolio in or around March 2010; (2) giving her a Letter of Warning in or around August 2010; (3) rating her as "Fully Successful" in her 2011 performance appraisal, as compared to the "Exceeds Expectations" rating she received in 2007; (4) issuing her several unspecified absent-without-leave ("AWOL") charges, presumably in late 2011 and early 2012; (5) placing her on leave restriction, apparently in May 2012 and again in January 2013; (6) issuing her a Letter of Reprimand in January 2012; (7) giving her a three-day suspension in August 2012; and (8) issuing her a proposed five-day suspension in March 2013. (*See id.* at 15-17).[7] Upon review of

---

[7] Although Ricci did not specifically exhaust most of these individual incidents at the administrative level, this does not necessarily bar her from including these allegations as part of her hostile work environment claim. As noted earlier, so long as one act contributing to the

the record, the Court concludes that, even when viewing the evidence in the light most favorable

to Ricci, these allegations fail to establish an actionable hostile work environment as a matter of

law. As the Court will explain, Ricci fails to show that many of the acts underpinning her claim

bear any causal connection to her protected activity, and those acts that a jury could conceivably

find causally linked to Ricci's complaints are not sufficiently severe or pervasive to give rise to a

viable hostile work environment claim.

For purposes of discrete retaliation claims, "a causal connection . . . may be established

by showing that the employer had knowledge of the employee's protected activity, and that the

adverse . . . action took place shortly after that activity." *Rochon v. Gonzales*, 438 F.3d 1211,

1220 (D.C. Cir. 2006) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985))

(alterations in original); *see also Holbrook v. Reno*, 196 F.3d 255, 263 (D.C. Cir. 1999).

Although the D.C. Circuit has never expressly extended this framework to the retaliatory hostile

work environment context, other courts in this District "have applied the 'knowledge plus

temporal proximity' standard to retaliatory hostile work environment claims as well."

*Bergbauer*, 2013 WL 1245944, at *17; *see also Na'im v. Clinton*, 626 F. Supp. 2d 63, 81

(D.D.C. 2009); *Nichols v. Truscott*, 424 F. Supp. 2d 124, 141 (D.D.C. 2006). And this is the

approach Ricci presses here. (*See* Pl.'s MSJ Opp'n at 15) ("A causal connection can be

---

hostile work environment "occurs within the filing period, the entire time period of the hostile
environment may be considered by a court for the purposes of determining liability." *See
Morgan*, 536 U.S. at 117. In turn, "[s]ubsequent events . . . may still be part of the one hostile
work environment claim." *Id.*; *see also Singletary*, 351 F.3d at 527 n.9 (reiterating same and
observing "that the entire time being of the hostile environment may be considered by a court for
the purposes of determining liability"). Since the Department does not argue that these acts are
too unrelated or diffuse to be considered as part of the same hostile work environment, the Court
presumes that the all of these acts—whether exhausted or not—can be advanced as part of
Ricci's claim. Of course, were Ricci pursuing discrete retaliation claims based on these
incidents, her failure to exhaust would likely be fatal to such claims. But Ricci has confirmed
that she does not assert any discrete retaliation claims as part of her case.

established by showing the employer's supervisors had knowledge of the protected activity, and the injury of harm occurred shortly after the protected activity."). With one relevant exception, Ricci's sole basis for claiming a causal link between her protected activity and the State Department's purportedly retaliatory acts is timing alone—i.e., the mere sequencing of events. (*Id.* at 16) ("The actions are retaliatory acts, *taken after Ms. Ricci filed her complaint of discrimination*. Viewed objectively, a reasonable person would be deterred from making a claim, having observed the multiple adverse actions taken against Ms. Ricci.") (emphasis added). Our Circuit has held that a "close temporal relationship may alone establish the required causal connection," *Singletary*, 351 F.3d at 525, "but only where the two events are very close in time," *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (quoting *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007)).

In analyzing this causation theory, the Court must first identify the particular protected activity—and the timing of such activity—underpinning Ricci's claim. In her opposition brief, Ricci relies exclusively on her January 2010 contact with Ms. DeHeer in the Office of Civil Rights. (*See* Pl.'s MSJ Opp'n at 15-17). At oral argument, however, Ricci's counsel also referenced as protected activities Ricci's contact with an EEO Counselor on April 21, 2010, as well as Ricci's filing of her formal EEO complaint on August 3, 2010. The Court will therefore consider all of these claimed protected activities in evaluating Ricci's retaliatory hostile work environment claim.[8] *See Hamilton*, 666 F.3d at 1358 ("[C]ourts should consider later protected

---

[8]     The State Department argues that Ricci's contact with Ms. DeHeer cannot constitute "protected activity" for purposes of Title VII. According to the Department, in reaching out to Ms. DeHeer, Ricci sought to initiate a union-related grievance, not to file a complaint of employment discrimination, which means that Ricci's contact cannot amount to protected opposition activity for purposes of Title VII. *See, e.g.*, *King v. Jackson*, 468 F. Supp. 2d 33, 37-38 (D.D.C. 2006) ("Title VII's opposition clause protects an individual who opposes an act of employment discrimination."). But on balance, the Court need not decide this issue because, as

activity in determining whether evidence of temporal proximity satisfies the causation element."); *see also Jones v. Bernanke*, 557 F.3d 670, 680 (D.C. Cir. 2009). But even then, most of the Department's allegedly retaliatory actions against Ricci did not occur until months—and, in many cases, *years*—after Ricci's most recent protected activity in August 2010.

First, Ricci received the "Fully Successful" (rather than "Exceeds Expectations") performance appraisal rating in February 2012—approximately sixteen months after filing her EEO complaint, and more than two years after initially contacting Ms. DeHeer in the Office of Civil Rights. (*See* Dkt. No. 30-7 (Pl.'s MSJ Ex. 7)). Similarly, Ricci was charged with AWOL in late 2011 and during 2012, and she was placed on leave restrictions in May 2012 and in January 2013. (*See* Dkt. Nos. 30-2, 31-4 (Pl.'s MSJ Exs. 1K, 24C)).[9] In addition, Ricci received the challenged Letter of Reprimand in January 2012, she received her three-day suspension in August 2012, and she was notified of her proposed five-day suspension in March 2013. (Dkt. Nos. 25-2, 42-1 (Def.'s MSJ Exs. B4, B5); Dkt. Nos. 30-12, 31-5 (Pl.'s MSJ Exs. 12, 24D)).[10] These lengthy delays—all of which span more than a year from Ricci's protected activity, and some much longer—are simply too great to allow for an inference of causation based on timing alone. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) ("Action taken . . . 20

---

[9]     explained *infra*, even assuming that Ricci's January 2010 contact amounted to protected activity, her retaliatory hostile work environment claim still fails as a matter of law.

[9]     Ricci offers no specific dates anywhere in her opposition brief for the AWOL charges she claims were retaliatory. Based on the parties' Compiled Statement of Facts, however, the Court presumes that Ricci takes issue with the AWOL charges from December 9, 2011, and February 29, 2012. (*See* Compiled Facts at ¶ 23). Ricci may also be challenging subsequent instances of AWOL, such as those referenced in the proposed five-day suspension in March 2013, (*see* Dkt. No. 31-5 (Pl.'s MSJ Ex. 24D)), although Ricci never says as much. Even if considered, though, these additional instances are even more distanced in time from Ricci's protected activity—occurring in August, October, and November 2012—and would thus suffer the same fate.

[10]     It appears that Ricci first received notification of her three-day suspension on or around May 4, 2012. (*See* Dkt. No. 30-11, Pl.'s MSJ Ex. 11). But even this notification came nearly two years after her latest protected activity, and thus does not impact the Court's analysis.

months later suggests, by itself, no causality at all."); *Talavera v. Shah*, 638 F.3d 303, 313-14 (D.C. Cir. 2011) (explaining that "too much time had passed to link the past activity to the challenged action," where plaintiff alleged that her non-promotion in June 2004 was retaliatory for complaints made in 2002 and in September 2003); *see also Cooke v. Rosenker*, 601 F. Supp. 2d 64, 88 (D.D.C. 2009) ("[A] six-month delay by itself is insufficient to demonstrate the close temporal proximity necessary to infer a retaliatory motivation."); *Gustave-Schmidt v. Chao*, 360 F. Supp. 2d 105, 118-19 (D.D.C. 2004) (describing a three-month window as the "outer limit" of the temporal requirement in retaliation cases).

With respect to the proposed five-day suspension, Ricci offers an additional theory, above and beyond proximity alone, in an effort to establish a causal connection to her protected activity. She contends that the proposed suspension was "clearly" retaliatory because it was premised on her conduct in mid-2012 while under Ms. Koehler's supervision, but was not issued until March 2013, after Ms. Koehler's departure from the State Department. (*See* Pl.'s MSJ Opp'n at 16-17). In other words, Ricci argues that because State proposed discipline for behavior toward a supervisor who was not employed by the State Department at the time, a jury could find its motives retaliatory. The Court finds this argument unpersuasive. First, while Ricci focuses solely on those aspects of the proposed suspension concerning her communications with Ms. Koehler in May 2012, the suspension was also based on Ricci's apparent failure to follow leave procedures and additional occasions of AWOL, all of which occurred later in 2012—some just a few short months before the proposed discipline was issued. (*See* Dkt. No. 31-5 (Pl.'s MSJ Ex. 24D)). The State Department's reliance on these other concerns militates strongly against Ricci's retaliation theory, particularly since Ricci does not dispute the substance of the AWOL charges described in the proposed suspension. Moreover, the State Department offers a

legitimate explanation for the delay, responding that the Conduct, Suitability, and Discipline Division—the component of the State Department responsible for issuing the proposed suspension—did originally received concerns about Ricci's potentially insubordinate interactions with Ms. Koehler in May 2012; however, due to a large volume of work and staffing shortages, a final proposal letter was not sent to Ricci until early March 2013, after additional issues were forwarded for consideration. (*See* Dkt. No. 39-3 ("Bernlohr Decl.") at ¶¶ 9-12). Ricci does not even attempt to impugn the legitimacy of this explanation. For these various reasons, therefore, the Court finds that neither the timing nor the substance of the proposed five-day suspension amounts to evidence establishing a causal link to Ricci's protected activity.

At this point, then, the only remaining acts contributing to Ricci's allegedly hostile work environment are the reassignment of the North Pacific Fisheries negotiations from her portfolio in March 2010, and the Letter of Warning she received in August 2010. As to the former, even assuming that Ricci can establish some retaliatory animus for the reassignment—not surprisingly, the State Department argues otherwise—this single, personnel-related decision falls short of the severe or pervasive threshold to state a viable hostile work environment claim. Rather, as courts repeatedly hold, this type of "work-related action[] by supervisors"—at least in the absence of any added element of offensiveness, intimidation, or insult—generally provides insufficient grounds for a hostile work environment claim. *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (explaining that "the removal of important assignments . . . [cannot] be characterized as sufficiently intimidating or offensive in an ordinary workplace context"); *see also Brooks v. Grundmann*, 851 F. Supp. 2d 1, 6 (D.D.C. 2012) ("[N]on-selection for a desirable position [and] assignment to undesirable duties . . . do not establish a hostile work environment.") (citing *Veitch v. England*, 471 F.3d 124, 130-31 (D.C. Cir. 2006)); *Bell v.*

*Gonzales*, 398 F. Supp. 2d 78, 92 (D.D.C. 2005) (holding that "missed opportunities for teaching, travel, and high-profile assignments" and "reassignment to the Field Support Subunit" lacked the "severity that is required to establish a hostile work environment"). The Court finds that the removal of this single assignment from Ricci's work portfolio, particularly considering that she retained a substantial number of other assignments and responsibilities thereafter, (*see* Compiled Facts at ¶ 44), falls among the "ordinary tribulations of the workplace" and is not so "extreme [as] to amount to a change in the terms and conditions of [her] employment." *Faragher*, 524 U.S. at 788.

Nor does Ricci's receipt of a Letter of Warning several months later, in August 2010, establish a hostile work environment. As with Ricci's portfolio reassignment, this standalone incident of informal counseling or discipline—that did not carry any adverse consequences in and of itself—is a similarly routine, work-related action that is insufficient to support a viable hostile work environment claim. *See Nurriddin*, 674 F. Supp. 2d at 94. Further, Ricci does not allege, much less establish, that anything about the Letter of Warning—whether in its content or in the circumstances surrounding its issuance—subjected her to "intimidation, ridicule, and insult." *Hussain*, 435 F.3d at 366. Moreover, timing notwithstanding, Ricci also fails to establish a causal connection between this action and her protected activity. The State Department offers a legitimate, non-retaliatory explanation for the Letter of Warning, explaining that its issuance was warranted by the issues identified therein, namely State's belief that Ricci had "fail[ed] to follow directions" and had exhibited "poor conduct in communicating with [her] supervisor and other managers." (*See* Dkt. No. 25-6 (Def.'s MSJ Ex. F26)). And Ricci fails to come forward with evidence that would enable a reasonable jury to find this explanation pretextual. In fact, Ricci admits that she failed to timely provide a report to the Deputy Director

of the OMC, David Hogan, (it seems it was at least three weeks overdue), and while she quibbles with the other issues outlined in the letter, she does not outright deny the allegations either. (*See* Compiled Facts at ¶ 18). Instead, Ricci seemingly relies on the same proximity argument that propels the rest of her retaliation claim, given that the Letter of Warning was issued within weeks of her filing a formal EEO complaint. But faced with the State Department's non-retaliatory explanation, Ricci must come forward with something more than timing and proximity to survive summary judgment. *See, e.g.*, *Woodruff*, 482 F.3d at 530 ("[P]ositive evidence beyond mere proximity is required to defeat the presumption that [an employer's] explanations are genuine."); *Bell v. Donley*, --- F. Supp. 2d ----, 2013 WL 857748, at *13 (D.D.C. Mar. 8, 2013). She fails to do so.

In sum, the Court concludes that based on the undisputed factual record, no reasonable jury could conclude that the State Department subjected Ricci to a retaliatory hostile work environment. Summary judgment is thus warranted in the State Department's favor on Count II.

### B. Ricci's Motion for Preliminary Injunction

Having determined that the State Department is entitled to judgment as a matter of law on both of Ricci's claims, the Court can easily dispose of Ricci's Motion for Preliminary Injunction. To secure preliminary injunctive relief, Ricci "must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *see also Gordon v. Holder*, 632 F.3d 722, 724 (D.C. Cir. 2011). A preliminary injunction is an extraordinary form of interim relief that should be granted sparingly, and only if "the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "It is particularly important for

the movant to demonstrate a substantial likelihood of success on the merits," because otherwise "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Howard v. Evans*, 193 F. Supp. 2d 221, 226 (D.D.C. 2002) (citing *Benten v. Kessler*, 505 U.S. 1084, 1085 (1992)).

Applying these standards, Ricci's request for injunctive relief fails because she cannot establish a likelihood of success on the merits of her claims. Instead, as the Court has just explained, Ricci's claims are subject to dismissal on summary judgment as a matter of law and undisputed fact. In so concluding, the Court is mindful that Ricci's Supplemental Memorandum seeking injunctive relief sets forth additional acts—not raised through her summary judgment briefing—that she alleges contributed to the retaliatory hostile work environment. (*See* Dkt. Nos. 38, 38-15). In particular, Ricci focuses on the following newly-asserted actions: (a) Ms. Koehler's issuance of a "Not Successful" interim evaluation in July 2012, and the State Department's concurrent failure to provide Ricci with a performance improvement plan; (b) Mr. Hogan's issuance of an overall summary rating of "Not Fully Successful" to Ricci in or around April 2013; (c) Mr. Balton's decision, shortly thereafter, not to alter Ricci's rating upon reconsideration; (d) Mr. Hogan's indication that he planned to place Ricci on a performance improvement plan; and (e) Ricci's loss of eligibility for the State Department's student loan repayment program due to her "Not Successful" summary rating. (*See id.*). None of these new allegations impact the Court's earlier analysis, and they certainly do not establish a substantial likelihood that Ricci will succeed on the merits, as required for interim injunctive relief.

Rather, these contentions suffer from the same flaw discussed above—Ricci fails to show a causal link between these events and her protected activity. Instead, she essentially relies on timing alone, but these incidents are even more removed in time from her protected activity and

thus cannot be found retaliatory based solely on timing. *See Clark Cnty.*, 532 U.S. at 273-74; *Talavera*, 638 F.3d at 313-14. Otherwise, Ricci makes only one other linkage-related argument that merits any attention: she asserts that the involvement of the State Department's attorney— apparently the same attorney involved in the instant litigation, Stacy Hauf—in consulting with Mr. Balton regarding Ricci's performance appraisal constitutes "direct evidence" of retaliation. (Dkt. No. 38-15 at 2-3). The Court disagrees. But the document Ricci relies upon for this argument is a version of Mr. Balton's response to Ricci with the "track changes" feature of Microsoft Word visible, containing comments from Ms. Hauf to Mr. Balton. (*See* Dkt. No. 38-13). The State Department asserts that the document was inadvertently produced and maintains that it is protected by the attorney-client privilege. (*See* Dkt. No. 39 at 34 n.19). In view of this, Ricci's reliance on this document is improper, and she does not even respond to State's claim of privilege in her reply brief. In sum, Ricci's newly-proffered allegations of purportedly retaliatory acts do not impact the Court's analysis as to the merit of her retaliatory hostile work environment claim.

With this issue decided, the Court need not venture any farther down the preliminary injunction path. *See Greater New Orleans Fair Housing Action Ctr. v. U.S. Dep't of Housing and Urban Dev.*, 639 F.3d 1078, 1088 (D.C. Cir. 2011) ("When a plaintiff has not shown a likelihood of success on the merits, there is no need to consider the remaining factors."); *Ark. Dairy Coop. Ass'n, Inc. v. U.S. Dep't of Agric.*, 573 F.3d 815, 832 (D.C. Cir. 2009) (same). Nevertheless, out of an abundance of caution and to enable full review by the Circuit should this case be appealed, the Court will briefly address and weigh the remaining preliminary injunction factors. *See Gordon v. Holder*, 632 F.3d 722, 725 (D.C. Cir. 2011) (remanding "to allow the district court to weigh the factors in determining whether a preliminary injunction is warranted");

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 305 (D.C. Cir. 2006) ("[W]ithout any conclusions of law as to the three remaining factors, we are unable to determine whether the district court properly [exercised its discretion].").

On the second factor—irreparable injury—the Court finds that Ricci fails to establish the requisite irreparable injury to secure interim injunctive relief. Ricci asserts that State's actions are causing "damage to [her] reputation and denial of career opportunities," and she also contends that her placement on a performance improvement plan has rendered her ineligible for the State Department's student loan repayment program. In its opposition brief, State argued that none of Ricci's claimed injuries rose to the level of "irreparable" injury. Surprisingly, Ricci failed to respond to these arguments altogether, practically failing to address the irreparable injury component of injunctive relief whatsoever in her reply brief. Nor did Ricci touch on this issue whatsoever during oral argument. The Court thus deems State's arguments on this point conceded, *see Hopkins*, 284 F. Supp. 2d at 25 (citing *FDIC*, 127 F.3d at 67-68), although the State Department's arguments are well taken in any event. First, Ricci's assertion that she is being prevented "from continuing in employment in her field," (*see* Dkt. No. 26-6 at 6), is vastly overstated. Instead, the evidence simply shows that Mr. Balton declined to grant Ricci permission to accept a particular detail assignment outside of OMC. (*See* Dkt. No. 26-1 ("Ricci Decl.") at ¶¶ 27-28; Dkt. No. 39-2 ("Balton Decl.") at ¶¶ 5-9). With respect to her claims of reputational harm, it is true that "reputational injury can be used to establish irreparable harm in certain circumstances . . . [but] the showing of reputational harm must be concrete and corroborated, not merely speculative." *See Trudeau v. FTC*, 384 F. Supp. 2d 281, 297 (D.D.C. 2005), *aff'd*, 456 F.3d 178 (D.C. Cir. 2006). Here, Ricci's claim of reputational injury is just that—speculative. Finally, with respect to Ricci's loss of student loan reimbursement payments,

it is well settled that "recoverable economic losses are not considered irreparable." *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1507 (D.C. Cir. 1995). Our Circuit "has set a high standard for irreparable injury," *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297, and none of Ricci's claimed injuries clear this tall hurdle.

Turning to the third and fourth factors, the Court similarly concludes that Ricci has not established that the balance of equities tips in her favor, or that the public interest would be served by the issuance of a preliminary injunction. With respect to the equities, the Court finds that upending the State Department's day-to-day management of its personnel—and instead forcing Ricci's supervisors to route any potential criticism or discipline of Ricci through a disinterested third party—would work at least some hardship on the State Department. And when balanced against Ricci's unsubstantiated claims of retaliation, the scale does not tip in her favor. As for the public interest, Ricci contends that "there is a broad public interest in the elimination of discrimination and the protection against retaliation." (Dkt. No. 26-6 at 7). The Court agrees with this goal in the abstract, but Ricci puts forth nothing to suggest that the same objective could not be achieved if this lawsuit proceeded in ordinary course. Moreover, while the public interest is certainly served by vindicating meritorious Title VII claims, the opposite is true once a court has already concluded that those claims lack merit, as here. Accordingly, both of these factors weigh against preliminary injunctive relief as well.

To summarize, because Ricci cannot establish a substantial likelihood of success on the merits of her claims, and because none of the other factors the Court must consider tilt in Ricci's favor, the Court denies Ricci's Motion for Preliminary Injunction.

## CONCLUSION

For the foregoing reasons, the Court concludes that the State Department's Motion for Summary Judgment will be **GRANTED**, and that Ricci's Motion for Preliminary Injunction will be **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

Date: September 23, 2013

_____
ROBERT L. WILKINS
United States District Judge